**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**STEPHANIE FLAGLER,**

                       **Plaintiff,**              **6:08-cv-138**
                                                **(GLS/ATB)**

        **v.**

**MATTHEW E. TRAINOR et al.,**

                       **Defendants.**
_____

**APPEARANCES:**              **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Peter M. Hobaica, LLC     B. BROOKS BENSON, ESQ.
2045 Genesee Street
Utica, NY 13501

Golden Law Firm             LAWRENCE GOLDEN, ESQ.
1412 Genesee Street
Utica, NY 13502

**FOR THE DEFENDANTS:**
Murphy, Burns Law Firm        THOMAS K. MURPHY, ESQ.
226 Great Oaks Boulevard
Albany, NY 12203

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Stephanie Flagler commenced this action against defendants

Matthew E. Trainor and the County of Fulton, New York ("the County"),

alleging a host of claims pursuant to 42 U.S.C. § 1983 against Trainor in

his individual capacity, and New York law against Trainor and the County.

(Compl. ¶¶ 1, 35-72, Dkt. No. 1.)  Pending is defendants' motion for

summary judgment.  For the reasons that follow, the motion is granted.

## II. Background

**A.    Facts**[1]

In fall 2006, Flagler testified before a grand jury related to the

prosecution of her on-again, off-again boyfriend, Brandon Becker, who was

accused of, among other things, violating an order of protection that

required him to refrain from assaulting, stalking, or harassing her.  (SF[2]:

19, 22, 33; MT[3]: 27, 29-30, 46; Dkt. No. 46, Attach. 8 ¶¶ 4, 6.)  At about the

same time, another criminal case was pending against Becker related to

his violation of an order of protection imposed for the benefit of his ex-wife,

Jamie Becker.  (MT: 34; Dkt. No. 46, Attach. 8 ¶ 5.)  On January 5, 2007,

---

[1] Unless otherwise noted, the facts are undisputed.

[2] Page references preceded by "SF" refer to the August 19, 2009 transcript of Flagler's deposition in this case.  (Dkt. No. 46, Attach. 4.)

[3] Page references preceded by "MT" refer to the August 19, 2009 transcript of Trainor's deposition in this case.  (Dkt. No. 49, Attach. 6.)

Trainor, the Fulton County assistant district attorney prosecuting Becker in both cases, met with Flagler to discuss a letter he received in conjunction with a motion to dismiss the indictment filed by Becker in the first of his two pending criminal cases.  (MT: 11-13, 17, 50-51; Dkt. No. 46, Attach. 8 ¶ 6.)  That letter, which was signed by Flagler, notarized, and came into being at the behest of Becker, expressed her intent to no longer pursue the criminal charges against Becker, and, moreover, "to drop the order of protection." (Defs.' Statement of Material Facts (SMF) ¶ 5, Dkt. No. 46, Attach. 1; Dkt. No. 46, Attach. 6.)  During their meeting, Flagler admitted to signing the letter, but explained that she did not wish the charges to be dropped, and also wanted the order of protection to remain in place.  (MT: 51.)

Trainor claims that in the ensuing months, up until March 6, 2007, he "made numerous attempts to contact . . . Flagler, leaving several voice messages on her cell phone."  (Dkt. No. 46, Attach. 8 ¶ 9.)  Becker's trial was scheduled in February to begin on March 12, which prompted Trainor to prepare a subpoena to secure Flagler's presence at trial.  (MT: 54, 59.)  Trainor also contends that, at some point in February, he learned from Jamie that Flagler and Becker "were back together, in violation of the [o]rder of [p]rotection."  (Dkt. No. 46, Attach. 8 ¶ 10.)  Based on that

information, Trainor alleges that he did not believe that Flagler was staying at her apartment in Utica, New York, but was, instead, staying with Becker in Gloversville, New York. (MT: 62-64.) Trainor instructed investigator Ben Close with the district attorney's office to attempt to serve Flagler at Becker's address in Gloversville. (MT: 66-67; BC[4]: 64; Dkt. No. 46, Attach. 8 ¶¶ 11-12.) Close was unable to serve the subpoena. (BC: 54-55.)

At some point in February and early March, Jamie provided additional information to Trainor that "Becker might be trying to influence Flagler to not appear and testify at the trial," and that Flagler had plans to travel to Georgia, leaving March 5 and returning March 12. (Dkt. No. 46, Attach. 8 ¶ 14.) Trainor claims that he placed a telephone call to Flagler at the end of February 2007, and left her a voice message explaining that he needed to serve her with a subpoena. (MT: 89-90; SF: 43; Defs.' SMF ¶ 2.) According to Trainor, he further explained that Flagler needed to return his call and arrange for service of the subpoena, or he would be forced to seek a material witness order[5] (MWO) to secure her attendance

---

[4] Page references preceded by "BC" refer to the October 14, 2009 transcript of Close's deposition in this case. (Dkt. No. 49, Attach. 7.)

[5] Under New York's Criminal Procedure Law, "[a] material witness order is a court order (a) adjudging a person a material witness in a

at Becker's trial.  (MT: 89-90.)  Flagler denies that Trainor warned her about the MWO at any time.  (SF: 49.)  Trainor made additional calls to Flagler over the next several days.  (Defs.' SMF ¶ 2; SF: 45-47; MT: 53, 57.)  On March 1, Trainor obtained an MWO, which he provided to the Utica Police Department (UPD) for execution.  (MT: 69-70, 90-91.)

On March 6, Trainor received a call from Becker's criminal defense attorney, who told him that he and Flagler had just spoke, and that she told him she would be present at trial to testify.  (MT: 108-09.)  Minutes later, Flagler phoned Trainor and told him she would be at trial, but that she was unable to meet to accept service of the subpoena before departing for her planned trip to Georgia.  (MT: 93-94, 109-12.)  After hanging up with Flagler, Trainor called the UPD to find out whether any attempts had been made by an officer to serve the subpoena, but no one answered and he left a message asking for someone to return his call.  (MT: 113-14.)  According to Trainor, after he left his office for the evening, and unbeknownst to him until after the MWO was executed, Flagler faxed a letter to the district attorney's office expressing her intention to appear for trial.  (MT: 116-18.)

---

pending criminal action and (b) fixing bail to secure h[er] future attendance threat."  N.Y. Crim. Proc. L. § 620.10.

*1.    Flagler's Cellular Telephone*

On the morning of March 7, Trainor learned that the MWO had been executed, and that Flagler was in custody.  (MT: 118.)  She was brought to court for arraignment later that day, and a judge appointed an attorney to represent her and remanded her.  (MT: 121-23.)  Flagler gave her cellular telephone (hereinafter "cell phone") to her aunt at some point that day before her intake at the Fulton County Correctional Facility.  (MT: 146; Dkt. No. 46, Attach. 5; Defs.' SMF ¶ 18.)  The following day, Flagler was brought before the presiding judge for a hearing, at which time Trainor withdrew the MWO on Flagler's aunt's promise to procure Flagler's presence at trial the following Monday.  (MT: 137-38, 146.)  At the hearing, the aunt also provided Flagler's cell phone to investigator Close upon request of Trainor.  (MT: 147-49.)  According to Trainor, Close locked the cell phone in his desk, and Trainor never had physical possession of it. (MT: 152-53, 158.)

Trainor explained in his deposition that the cell phone was of interest to him because he had already obtained telephone records for Becker that indicated he was calling Flagler's phone in violation of the order of protection, and that there was a chance that he would have Flagler's

phone analyzed in contemplation of bringing new charges against Becker. (MT: 152; Defs.' SMF ¶ 4.)  After the prosecution of Becker related to Jamie concluded in mid to late summer, Trainor admits that he had no more need for Flagler's cell phone.  (MT: 157.)  Trainor also concedes that Flagler requested the return of her cell phone on March 8 and "a number of [other] times," but not after the case involving Jamie was concluded.  (MT: 149, 156-57.)  The cell phone was ultimately returned to Flagler in February 2008.  (Defs.' SMF ¶ 19.)

>    2.    *Recording of Telephone Calls*

At the same time the prosecution of Becker related to Flagler was progressing, the case involving Jamie was also pending.  (Dkt. No. 46, Attach. 8 ¶ 35.)  In early February 2007, Jamie expressed to Trainor that she wished she had a recording of a telephone call wherein Becker yelled at her.  (MT: 141.)  Sharing in Jamie's sentiment, Trainor explained that he could show her how to record calls, and he personally went to Jamie's home to "set up a phone device" to record calls.  (MT: 141.)  Trainor denies that he asked Jamie to record any calls; however, he understood that Jamie would provide him with copies of the conversations recorded with the equipment he installed for her.  (MT: 142.)

*3.    Trainor's Statement in the Press*

On May 12, 2007, after Becker was found guilty of two felony counts at trial, an article appeared in *The Leader-Herald* wherein Trainor was quoted as saying, among other things, that "Flagler . . . had been 'hiding out' in various places and was concerned the court would not be able to produce Flagler as a witness for trial."  (Dkt. No. 49, Attach. 5; Dkt. No. 46, Attach. 8 ¶ 31.)  At his deposition, Trainor admitted that he made the comments that appeared in the newspaper.  (MT: 160-61; Dkt. No. 46, Attach. 8 ¶ 32.)

**B.    Procedural History**

This action was commenced in February 2008, and assigned to U.S. District Judge Neal P. McCurn.  (Compl.)  Defendants interposed an answer and moved to dismiss the complaint on the basis that Trainor was entitled to absolute immunity on Flagler's federal causes of action, and that the court should decline to exercise supplemental jurisdiction of the remaining state law claims.[6]  (Dkt. Nos. 5, 10.)  After finding that Trainor

_____

[6] Flagler conceded that her federal causes of action were pleaded only as against Trainor, (Dkt. No. 15 at 20-21), which excused the need of the court to consider whether any other defenses compelled dismissal of the federal claims.

"was cloaked in the protection of absolute immunity," and, as requested by defendants, declining to exercise jurisdiction over the remaining state law claims without reaching their merits, the court granted the motion and dismissed the complaint in its entirety. (Dkt. No. 29 at 12-13.)

Flagler appealed the dismissal of her complaint. (Dkt. No. 32.) Upon review, the Second Circuit affirmed so much of the dismissal as "found Trainor absolutely immune from Flagler's claim that he violated her constitutional rights by making false statements in support of a[n MWO]." *Flagler v. Trainor*, 663 F.3d 543, 550 (2d Cir. 2011). The Court vacated and remanded, however, as to the remaining claims "because absolute immunity does not immunize prosecutors from liability for making defamatory statements to the press, accessing a person's voicemail without consent, or persuading a party to a conversation to record its contents." *Id.* The Circuit also expressed that "the district court should consider in the first instance whether Trainor is absolutely immune for continuing to withhold/preserve evidence—Flagler's cell phone." *Id.*

Following issuance of the mandate, the court determined that "a question remains as to whether Trainor is subject to qualified immunity on the claims of alleged false statements to the press, accessing or ordering

9

someone to access Flagler's voicemail, and persuading Becker's ex-wife to record telephone conversations she had with Flagler." (Dkt. No. 35 at 10.) The court permitted the parties an opportunity to submit additional briefing on the issue of whether qualified immunity shielded Trainor on the remaining claims, and directed them to contact the court to schedule argument "on the issue of how long absolute immunity shields a prosecutor for preserving/withholding evidence." (*Id.*) Defendants thereafter advised the court that, during the pendency of the appeal, Flagler had commenced an action in state court alleging "claims identical to th[e state claims] set forth in" this action.[7] (Dkt. No. 37.) Accordingly, defendants requested that, in the event Flagler decided to press forward with her federal action, they be permitted to file a motion for summary judgment given that discovery was then complete. (*Id.*) In response to that request, the court, by Text Order dated January 24, 2012, reset the dispositive motion deadline, and, afterward, extended the deadline several more times upon request of the parties, (Dkt. Nos. 38, 39, 40, 41, 42, 43, 44). The action was reassigned to this court, and defendants moved for summary

_____

[7] By agreement of the parties, the state court action has been stayed. (Dkt. No. 46, Attach. 3 ¶ 10.)

judgment.  (Dkt. Nos. 45, 46.)

### III.  Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd*, 489 F. App'x 500 (2d Cir. 2012).

### IV.  Discussion

The first matter to be addressed by the court is which of Flagler's claims remain following the appeal, and against whom they are pleaded. Defendants contend—unopposed—that the Second Circuit noted that Flagler has abandoned her claims against the County, and that, given the Court's approval of dismissal as to the claims arising from Trainor's allegedly "false statements in support of a[n MWO]," the state law claims arising "from her arrest and detainment pursuant to the [m]aterial [w]itness [w]arrant are . . . barred."  (Dkt. No. 46, Attach. 3 ¶¶ 12, 13, 17.) Ultimately, defendants maintain that only Flagler's fourth and fifth federal claims, and fifth state law claim remain.  (*Id.* ¶¶ 15, 17.)  Flagler does not contest any of these assertions.

There is no record support for the proposition that Flagler has abandoned her claims as against the County.  In response to defendants' motion to dismiss, and, in particular, their argument that no *Monell* claim had been pleaded, (Dkt. No. 10, Attach. 7 at 5-6; Dkt. No. 17 at 1), Flagler agreed and explained that the County was named as a defendant only with respect to the state law claims on a theory of *respondeat superior*, (Dkt. No. 15 at 20-21).  Accordingly, the County remains a defendant to the extent that any state law claims are pending, as discussed below.

Next, Judge McCurn did not reach the merits of the state law claims, but, instead, declined to exercise supplemental jurisdiction over them given the dismissal of all of Flagler's federal claims.  (Dkt. No. 29 at 13.)  As such, those claims were revived when the Circuit reinstated some of Flagler's federal claims.  *See Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 79 (2d Cir. 2003); *see also* 28 U.S.C. § 1367(c)(3).  However, the Circuit's finding that "Trainor [is] absolutely immune for making alleged false statements in support of a [MWO] and warrant," *Flagler*, 663 F.3d at 549, applies with equal force to Flagler's state law claims arising from those same circumstances, *see Hirschfeld v. City of N.Y.*, 253 A.D.2d 53, 59 (1st Dep't 1999); *Bowles v. State*, 208 A.D.2d 440, 444 (1st Dep't 1994).  For

12

these reasons, only Flagler's fifth state law cause of action for defamation survives, as it is the only state law claim that does not arise out of Trainor's application for an MWO.[8]  (Compl. ¶¶ 53-72.)  Moreover, that claim is alleged as against Trainor and the County.  (*Id.* ¶¶ 29-30; Dkt. No. 15 at 20-21.)

As a result of the Circuit's partial vacatur, the following federal claims remain: (1) federal defamation; (2) accessing Flagler's voicemail without consent; (3) directing or facilitating the recordation of telephone calls involving Flagler; and (4) failing to return Flagler's cell phone.  *Flagler*, 663 F.3d at 550.

## A.    Defamation

As to Flagler's federal claim of defamation, Trainor argues that she has not established that his statement that she was "hiding out" is false, nor has she shown a specific deprivation of a tangible interest as required

---

[8] Notably, Flagler's second and third state law causes of action—for intentional infliction of emotional distress and negligent infliction of emotional distress, respectively—contain allegations that they arise out of "[t]he acts and conduct of . . . Trainor, enumerated []above."  (Compl. ¶¶ 57-62.)  The court is satisfied that the acts and conduct referenced therein pertains to Trainor's application for an MWO, particularly in light of the fact that Flagler makes no argument whatsoever that any of her state law claims, other than defamation, remain for adjudication.

under the "stigma-plus" standard applicable to such claims. (Dkt. No. 46, Attach. 2 at 1-3.) Trainor asserts that Flagler's state law defamation claim fails because his statement was an unactionable expression of opinion. (*Id.* at 3-4.) Alternatively, Trainor contends that he is entitled to qualified or absolute immunity on the defamation claims.[9] (*Id.* at 10-11.) In response, Flagler contends that she has demonstrated the necessary showing for a stigma-plus claim under federal law, and that, as a result of Trainor's comment, "her grades declined at school and she was forced to drop out," and "the stress and anxiety from the defamation" caused "lack of menstruation, weight gain, [and] inability to sleep," all of which demonstrate a sufficient injury. (Dkt. No. 49, Attach. 8 at 9-10.) On her state law claim, Flagler argues that Trainor's comment is an expression of fact, or, in the least, a mixed expression of fact and opinion, and that Trainor is not entitled to absolute or qualified immunity.[10] (*Id.* at 1-9.) The court agrees

---

[9] The Second Circuit has already ruled that Trainor's statements to the press are not protected by absolute immunity, *Flagler*, 663 F.3d at 549 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 278 (1993)); however, given the court's determination that both claims are subject to dismissal, it need not reach the question of whether Trainor is entitled to qualified immunity.

[10] Flagler argues, at length, that Trainor is not entitled to "qualified privilege." (Dkt. No. 49, Attach. 8 at 4-8.) However, Trainor does not allege that he is entitled to summary judgment on that basis, and the

with Trainor that both claims must be dismissed.

      *1.    Federal Claim—Stigma Plus*[11]

Defamation is an issue of state, not federal law, "and therefore provides an insufficient basis to maintain a § 1983 action." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004). Under limited circumstances, however, a plaintiff may seek relief under the so-called "stigma plus" doctrine. *See McCaul v. Ardsley Union Free Sch. Dist.*, 514 F. App'x 1, 4 (2d Cir. 2013) (citing *Paul v. Davis*, 424 U.S. 693, 708-09 (1976)). "Specifically, an action can be grounded in 42 U.S.C. § 1983 when that plaintiff can demonstrate 'a stigmatizing statement plus a deprivation of a tangible interest.'" *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (quoting *Algarin v. Town of Wallkill*, 421 F.3d 137, 138 (2d Cir. 2005)). A

---

court, therefore, need not reach Flagler's argument. Moreover, in her supporting affidavit, Flagler contends that Trainor's statement was tantamount to branding her a criminal. (Dkt. No. 49, Attach. 1 ¶¶ 10, 12.) She makes no legal argument regarding this assertion, (Dkt. No. 49, Attach. 8 at 1-10), and the court need not address it.

    [11] The parties appear to agree that Flagler has pleaded a claim under the doctrine of stigma plus. (Dkt. No. 46, Attach. 2 at 1-3; Dkt. No. 49, Attach. 8 at 9-10.) The court is not convinced that anything other than ordinary defamation is raised in the portion of the complaint alleging Flagler's federal claim, (Compl. ¶ 52), but because a cause of action for stigma plus is unassailable for the reasons discussed below, this shortcoming is of no moment.

successful claim requires the plaintiff to prove: "(1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah*, 383 F.3d at 38 (quoting *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds sub nom. Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003)). The "'plus' prong under this doctrine" is satisfied by "the deprivation of a plaintiff's property" or some other tangible interest, *id.*, but "the deleterious effects which flow directly from a sullied reputation [are] normally . . . insufficient," *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994). In fact, falling into the category of insufficient injury are "the impact that defamation might have on job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation." *Id.* Those sorts of injuries are recoverable under state, but not federal, law. *Id.*

Here, Flagler's stigma plus claim fails. Assuming that the first prong is met, a premise rejected below on the basis that the statement is not capable of being proven false, *see infra* Part IV.A.2, Flagler has not shown

anything other than the deleterious effects flowing from a sullied reputation. *Cf. Valmonte*, 18 F.3d at 1001 (finding a tangible burden on a plaintiff who, as a result of defamation, was included on the Central Register, which all child care providers must consult before hiring someone for a child care-related job). Flagler claims that, as a result of Trainor's "defamatory statement and the publicity resulting therefrom," she suffered "a great deal of mental stress, anxiety, physical problems and negatively affected [her] school performance. In fact, as [she] testified at [her] deposition, [she] failed [her] final exam in [her] nursing course in May of 2007, and as a result thereof, decided not to return to the school." (Dkt. No. 49, Attach. 1 ¶ 5; SF: 16.) Flagler further alleges that Trainor's comment that she was "hiding out" caused her to cease menstruation for nearly one year, experience difficulty sleeping, and gain weight, and "forced [her] to drop out of nursing school." (Dkt. No. 49, Attach. 1 ¶¶ 6-7, 12; SF: 114.) In her response to the pending motion, Flagler argues that her physical problems and failing out of nursing school, which she contends is akin to being terminated from employment or suffering interference with a business, demonstrate an issue of fact on the second prong. (Dkt. No. 49, Attach. 8 at 10.)

As a matter of law, however, the injuries alleged by Flagler do not show anything more than "the deleterious effects which flow directly from a sullied reputation." *Valmonte*, 18 F.3d at 1001. By her own admission, all the ill-effects supposedly suffered by Flagler sprang from the stress and anxiety she claims to have sustained by the publication of Trainor's comments. (Dkt. No. 49, Attach. 1 ¶¶ 5-7, 10, 12.) These kinds of injuries simply do not meet the "plus" requirement. *See Izzo v. City of Syracuse*, No. 98-CV-0778, 2000 WL 1222014, at *7 (N.D.N.Y. Aug. 3, 2000) ("[H]umiliation and/or anxiety allegedly suffered by [a plaintiff] as a result of the defendants' actions . . . fail to meet the requirement of a stigma plus some other deprivation.")

### 2. State Claim

Under New York law, a claim of defamation arises from "the making of a false statement which tends to 'expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of h[er] in the minds of right-thinking persons, and to deprive h[er] of their friendly intercourse in society.'" *Foster v. Churchill*, 87 N.Y.2d 744, 751 (1996) (quoting *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 379 (1977)); *accord Dillon v. City of N.Y.*, 261 A.D.2d 34, 37-38 (1st Dep't 1999). Statements of

18

opinion—as opposed to those of fact—are not actionable no matter how offensive, and the determination of whether a statement constitutes opinion or fact is a question of law.  *See Mann v. Abel*, 10 N.Y.3d 271, 276 (2008). "Distinguishing between opinion and fact has 'proved a difficult task,'" but the New York Court of Appeals has articulated the following factors to be considered when determining that issue:

> "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact."

*Id.* (quoting *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995) (internal quotation marks and citations omitted)); *see Dillon*, 261 A.D.2d at 38 ("Loose, figurative or hyperbolic statements, even if deprecating the plaintiff, are not actionable." (citing *Gross v. N. Y. Times Co.*, 82 N.Y.2d 146, 152-53 (1993); *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 244 (1991)).  On the other hand, when a statement fairly characterized as "opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, it is a 'mixed opinion' and is

19

actionable." *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986).

The language at issue here appears in a May 14, 2007 newspaper article titled "Assault victim may sue Fulton County over 'arrest.'" (Dkt. No. 49, Attach. 5 at 2.)  The first several sentences of the article provide details regarding Becker's criminal case and that Flagler "was picked up by Utica police and transferred to the Fulton County Correctional Facility on March 6 in order for her to testify against . . . Becker." (*Id.*)  The article continues on to explain that Flagler's attorney intends to file a notice of claim against unspecified individuals for what he refers to "as a 'pretty egregious situation.'" (*Id.*)  The article then turns to Trainor and provides the following:

> Fulton County Assistant District Attorney Matthew E. Trainor said his office was aware of the potential lawsuit.  He said his office had Flagler picked up on a material witness order.
>
> "It is an available process to us," Trainor said.  "We had reason to believe she would not appear."
>
> Trainor said Becker had been issued a "no contact order" by the court and had 'repeatedly violated' the order between November 2006 and February of this year.  He also said he understood Flagler—who said Becker did bite her, but denied police claims that he punched and choked her—had been "hiding out" in various places and was concerned the court would not be able to produce Flagler as a witness for trial.

"We had information she planned to leave the state,"
Trainor said. "She had not yet been served with a
subpoena to appear and we had cause for concern
she would not be available."

(*Id.* at 2-3.) The article concludes by explaining that Flagler denies

Trainor's accusation that she had been hiding out, she had no plans to

leave the state, and she felt that her arrest was entirely unnecessary. (*Id.*

at 3.)

Trainor's statement that Flagler was "'hiding out' in various places"

(*id.* at 2), is unactionable opinion. First, those words are not precise and

readily understood. Indeed, that phrase is susceptible to more than one

meaning and could be interpreted by a reader to mean any number of

things. Relatedly, the statement is not capable of being proven true or

false given its amorphous meaning. Lastly, considering the complained of

language in context, Trainor is expressing his opinion that—because

Flagler was avoiding testifying at trial, an opinion for which he disclosed his

factual basis by further stating that "'she planned to leave the state'" and

"'had not yet been served with a subpoena'"—the MWO was necessary to

secure her presence at trial. (*Id.* at 2.) The full context of the article would

signal to a reader that the words "'hiding out' in various places" meant that,

in Trainor's opinion, Flagler was being uncooperative with the prosecution, or avoiding contact with him.  Each of the factors identified in *Mann* weighs in favor of distinguishing the language at issue as nonactionable opinion.  *See* 10 N.Y.3d at 276.

Trainor's opinion that Flagler was "hiding out" is not a mixed opinion either.  Flagler's argument that—by indicating that Trainor "stat[ed] that he 'understood'" that she had been hiding out—an implication arose that Trainor was basing his understanding on facts undisclosed to the reader is without merit.  (Dkt. No. 49, Attach. 8 at 4.)  As discussed above, the full context of the article signals to the reader that Trainor's understanding that Flagler was "hiding out" is based upon the very facts disclosed in the two sentences that follow.  (Dkt. No. 49, Attach. 5 at 2-3.)  Because the factual basis for Trainor's opinion is disclosed, it is pure opinion and nonactionable.  *See Ferris v. Loyal Order of Moose Oneonta Lodge No. 465*, 259 A.D.2d 914, 915 (3d Dep't 1999) ("An allegedly defamatory statement is not actionable if it is 'pure opinion,' which is defined as being accompanied by a recitation of the facts upon which it is based.").

**B.**     **Accessing Voicemail Without Consent**

Trainor contends that Flagler's cause of action pertaining to his

alleged unauthorized access of her cell phone in an effort to access her voicemail, (Compl. ¶ 51), should be dismissed because the undisputed facts show that the calls were allegedly made at the time that the cell phone was in the possession of Flagler's aunt. (Dkt. No. 46, Attach. 2 at 9.) Flagler fails to respond to this argument, but the court agrees with Trainor that summary judgment is appropriate as to this claim.

Here, the undisputed facts demonstrate that Flagler's claim that Trainor unlawfully attempted to access her voicemail is wholly unfounded. As explained by Close and Trainor, the cell phone never came into the possession of Trainor, was not tampered with by Close, and remained locked in Close's desk until it was returned. (MT: 147-48, 152, 158; Dkt. No. 46, Attach. 7 ¶¶ 16-18.) While Flagler claimed that her telephone records, which have not been supplied as evidence in opposition to the motion, demonstrated that calls were made on the cell phone after it came into the possession of Close, she later admitted that she was aware of no evidence that Trainor made calls on her cell phone. (SF: 115-17.)[12]

_____

[12] The only mention that evidence exists to rebut the claims of Close and Trainor, outside of Flagler's equivocal deposition testimony, is in her response to defendants' statement of material facts wherein she claims—without any citation to supporting evidence—that "her cell phone records reveal that the voicemail account was accessed via the phone

Because Trainor has shown that he did not do what Flagler claims he did, and she has failed to rebut—or even respond to—his argument, summary judgment is appropriate.

## C.  **Recordation of Telephone Calls**

Trainor argues next that Flagler's claim that he "direct[ed] and/or facilitat[ed] illegal and/or improper recording of telephone conversations with [her]" in violation of her "right to privacy under the Fourteenth Amendment," (Compl. ¶ 51), should be dismissed.  (Dkt. No. 46, Attach. 2 at 7-9.)  Trainor's contention is that, because Jamie recorded the calls and was a willing participant in them, her conduct was lawful and his receipt of the calls could not be considered a wiretap without a search warrant.[13]  (*Id.* at 8.)  Flagler's response focuses solely on the availability of absolute or qualified immunity when a plaintiff alleges that a prosecutor has engaged in an illegal search.  (Dkt. No. 49, Attach. 8 at 11-13.)

_____

while it was in possession of [Trainor]."  (Dkt. No. 49, Attach. 9 ¶ 20.) Conspicuously absent from Flagler's response papers is any argument regarding this issue or the phone records.

[13] Trainor's additional argument that any telephone calls recorded as between Becker and Flagler while Becker was incarcerated did not violate Flagler's Fourteenth Amendment right to privacy, (Dkt. No. 46, Attach.2 at 8-9), is unnecessary because Flagler has not alleged any such claim.

Under both federal and New York law, it is not unlawful to record a telephonic communication where one party to that communication consents. *See* 18 U.S.C. § 2511(2)(c); N.Y. Penal Law § 250.00(1). Also, "[i]t is firmly established that audio recordings, obtained without a warrant and through hidden recording devices by an invited guest, do not violate the Fourth Amendment." *United States v. Davis*, 326 F.3d 361, 362 (2d Cir. 2003) (citing *United States v. White*, 401 U.S. 745, 749 (1971)). For these fundamental reasons, it cannot be said that Trainor "illegal[ly] and/or improper[ly]" directed or facilitated Jamie's recording of telephone conversations involving Flagler, even though he admits to providing Jamie with the necessary equipment. (Compl. ¶ 51; MT: 141-42.) Accordingly, Trainor is entitled to summary judgment on Flagler's claim regarding the recordation of telephone calls to which she was a participant.

## D.   **Failure to Return Cell Phone**

Trainor contends that Flagler suffered no violation or interference with her property rights under the Fourteenth Amendment by his retention of her cell phone until February 2008. (Dkt. No. 46, Attach. 2 at 5-7.) In particular, Trainor argues that the prosecution against Becker regarding Jamie did not conclude until June or July 2007, and Becker's time to

appeal did not expire until thirty days afterward.  (*Id.* at 5.)

Correspondingly, Trainor did not decide "until the end of the summer in

2007" to forego examination of the cell phone by the state crime lab.  (*Id.* at

6.)  Moreover, while Flagler demanded the return of her cell phone soon

after it came into the possession of investigator Close, she made no

demand for its return after she replaced it in August or September 2007.

(*Id.*)[14]  Alternatively, Trainor contends that he is entitled to qualified

immunity.[15]  (*Id.* at 10.)  Specifically, he asserts that, because it was

reasonable for him to retain the cell phone through the time that he

considered commencing a new prosecution against Becker, and Flagler

made no demand for return of the phone after the summer of 2007, "[i]t

was objectively reasonable for [him] to believe that the short delay in

---

[14] Trainor also claims that Flagler failed to avail herself of an available post-deprivation remedy—commencement of a N.Y. C.P.R.L. article 78 proceeding in state court.  (Dkt. No. 46, Attach. 2 at 6-7.)  Although for a reason other than that offered by Flagler, (Dkt. No. 49, Attach. 8 at 11), this argument is without merit.  Indeed, post-deprivation remedies serve as a defense to a § 1983 due process claim only where the deprivation was the result of a random and unauthorized act, *see Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990), which is not the case here.

[15] Notably, Trainor makes no argument that he is entitled to absolute immunity for preserving evidence.

returning the [cell] phone simply did not constitute a Constitutional violation."  (*Id.*)

Flagler argues in response that issues of fact exist such that summary judgment is inappropriate on this claim.  (Dkt. No. 49, Attach. 8 at 10-11.)  She tersely claims that a jury must resolve the question of when the cell phone should have been returned.  (*Id.* at 11.)  On the topic of qualified immunity, Flagler contends that issues of fact preclude such a finding; in particular, she points out that what the length of delay was and whether it was reasonable is for the jury's determination at trial.  (*Id.* at 15-16, 18.)

The Due Process Clause of the Fourteenth Amendment "requires that once a criminal proceeding is terminated or it has been found that seized property is not related to or needed for those proceedings, the property must be returned to its owner, unless the government can establish an alternative basis for holding the property."  *Escobar v. City of N.Y.*, No. 05-cv-3030, 2008 WL 5157011, at *4 (E.D.N.Y. Dec. 8, 2008) (citing *McClendon v. Rosetti*, 460 F.2d 111, 116 (2d Cir. 1972)); *see Herbert v. City of N.Y.*, No. 12-CV-1096, 2012 WL 3779230, at *1-2 (E.D.N.Y. Aug. 30, 2012).  On the issue of qualified immunity, "[a]

government official is entitled to qualified immunity for his actions unless his conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known."  *Rivers v. Fischer*, 390 F. App'x 22, 23 (2d Cir. 2010).  "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.'" *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (quoting *Young v. Cnty. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)).[16]

In this case, Trainor is entitled to qualified immunity regarding Flagler's claim that he retained her cell phone in violation of the Fourteenth

─────────────────

[16] Flagler's contention that summary judgment can be granted on qualified immunity grounds only where the defendant shows that "no reasonable jury could conclude that it was objectively unreasonable for the defendants to believe that they were acting in a fashion that did not violate an established federally protected right" viewing the evidence in the light most favorable to the plaintiff, (Dkt. No. 49, Attach. 8 at 15 (internal quotation marks and citations omitted)), is correct, but does not bear on the separate question of whether the right is "clearly established" in the first instance.  *See Gonzalez v. City of Schenectady*, No. 11-5403, 2013 WL 4528864, at *3 (2d Cir. Aug. 28, 2013) ("The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." (internal citation omitted)).

Amendment. The parties agree that Flagler made requests for the return of the cell phone, all of which were rejected by Trainor, "a number of times," including on March 8, and up through the conclusion of the first Becker prosecution. (MT: 149, 158; Dkt. No. 49, Attach. 1 ¶ 8.) It is also not in dispute that Flagler obtained a replacement cell phone in late August or early September 2007, and that the cell phone in question was returned to her in February 2008 for reasons unrelated to this litigation. (SF: 111-12.)

Flagler fails, however, to rebut Trainor's contention that he had a need for the cell phone until such time as the second Becker prosecution was concluded by plea in mid to late summer. (MT: 157; Dkt. No. 46, Attach. 8 ¶ 38.) And Flagler comes forward with no evidence to put into issue Trainor's assertion that he does "not recall receiving a request for the return of the [cell phone] after Becker's sentencing" in May or June 2007. (Dkt. No. 46, Attach. 8 ¶¶ 38-39.) In light of these unrebutted facts, Trainor retained the cell phone after it was no longer useful to him from mid to late summer, presumably July or August 2007, until February 2008—a period of approximately seven or eight months. While Flagler's right to the return of the cell phone is clearly established, the timing of the return is not. *See*

*Flagler*, 663 F.3d at 550 (identifying that, although a prosecutor may withhold/preserve evidence to defend a conviction, the Second Circuit has not determined the length of time that such retention may continue). Further compelling a finding that qualified immunity shields Trainor from liability is that Flagler failed to request the return of the property after such time as it was not needed by Trainor. (Dkt. No. 46, Attach. 8 ¶ 39.)

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 46) is **GRANTED**; and it is further

**ORDERED** that Flagler's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 1, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court